UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FARZANA M.,
                                    Plaintiff,

                    v.

MARTIN O'MALLEY,[1] Commissioner of
Social Security,
                                    Defendant.
_____

**DECISION**
**and**
**ORDER**

**21-CV-1040LGF**
(**consent**)

APPEARANCES:            LAW OFFICES OF KENNETH HILLER, PLLC
                        Attorneys for Plaintiff
                        KENNETH R. HILLER,
                        IDA M. COMMERFORD, and
                        JUSTIN DAVID JONES, of Counsel
                        6000 North Bailey Avenue
                        Suite 1A
                        Amherst, New York  14226

                        TRINI E. ROSS
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York  14202
                                and
                        LAUREN ELIZABETH MYERS
                        Special Assistant United States Attorney, of Counsel
                        Social Security Administration
                        Office of General Counsel
                        6401 Security Boulevard
                        Baltimore, Maryland  21235

## JURISDICTION

On November 16, 2023, the parties to this action, consented pursuant to 28

U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 18).  The matter is presently

---

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

before the court on motions for judgment on the pleadings filed by Plaintiff on August 17, 2022 (Dkt. No. 13), and by Defendant on January 17, 2023 (Dkt. No. 16).

## **BACKGROUND**

Plaintiff Farzana M. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and § 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA"), on February 3, 2012,[2] for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits").  Plaintiff initially alleged she became disabled on January 1, 1996 ("disability onset date" or "DOD"), based on depression, mental problems, panic attacks and a thyroid problem, later amending her DOD to February 3, 2012.  AR[3] at 124, 141, 145.  Plaintiff's application initially was denied June 11, 2012, AR at 62-68, and upon Plaintiff's timely request, AR at 69, on August 22, 2013, an administrative hearing was held in Buffalo, New York ("Buffalo") before Administrative Law Judge ("ALJ") Timothy M. McGuan ("ALJ McGuan") ("first hearing").  AR at 36-61.  Appearing and testifying at the first hearing were Plaintiff, represented by Kelly Laga, Esq., and vocational expert ("VE") Jay Steinbrenner.

On January 16, 2014, ALJ McGuan issued a decision denying Plaintiff's claim ("the first ALJ decision"), AR at 16-35, which Plaintiff appealed to the Appeals Council,

---

[2] Although Plaintiff's application was actually submitted on March 1, 2021, the parties agree that her protective filing date is February 3, 2012.  Plaintiff's Memorandum at 2; Defendant's Memorandum at 4. *See* 20 C.F.R. § 416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").
[3] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed in by Defendant in three volumes on March 16, 2022 (Dkts. 6, 7 and 8).

AR at 14-15.  On June 10, 2015, the Appeals Council issued a decision denying

Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final

decision at that time.  AR at 1-6.  On August 4, 2015, Plaintiff commenced an action in

this court seeking judicial review of the first ALJ decision, *Mikrazi v. Colvin*, No. 15-CV-

00698-JJM (W.D.N.Y.).  On September 21, 2016, United States Magistrate Judge

Jeremiah J. McCarthy ("Judge McCarthy"), acting pursuant to the parties' consent under

28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge, issued a

Decision and Order remanding the matter to the Acting Commissioner for further

proceedings regarding Plaintiff's residual functional capacity ("RFC") pertaining to her

psychological disorder as well as to fully develop the record to determine whether

Plaintiff's capacity to stand and walk is limited by pain in her foot.  *Mikrazi v. Colvin*,

2016 WL 5110035 (W.D.N.Y. Sept. 21, 2016); *Mikrazi v. Colvin,* No. 15-CV-00698-JJM,

Dkt. 15 (W.D.N.Y. Sept. 21, 2016); AR at 676-94.

Upon remand from this court, the Appeals Council remanded the matter to ALJ

McGuan for a new hearing.  AR at 696-98.  Accordingly, on June 19, 2018, a second

administrative hearing was held in Buffalo before ALJ McGuan ("second hearing").  AR

at 588-616, 1499-1525.  Appearing and testifying at the second hearing were Plaintiff,

represented by Zachary Zabawa, Esq., and VE Millie Droste.  On September 12, 2018,

ALJ McGuan issued a decision again denying Plaintiff's claim ("second ALJ decision"),

AR at 561-87, 1479-1498.  On January 9, 2019, Plaintiff commenced a second action in

this court seeking review of the second ALJ decision, *Mikrazi v. Comm'r of Soc. Sec.*,

No. 19-CV-00053-FPG (W.D.N.Y.), and on January 9, 2020, the parties stipulated to

remand the matter to the Commissioner, *id*., No. 19-CV-00053-FPG, Dkt. 19 (W.D.N.Y.

Jan. 9. 2020).  On July 23, 2020, the Appeals Council entered an order vacating the second ALJ decision and remanding the matter to the ALJ.  AR at 1528-34 ("Appeals Council's Order").  The Appeals Council specifically directed the ALJ to (1) further develop the evidence regarding Plaintiff's heel impairment including, if necessary, obtaining an opinion from a consultative examiner or medical expert regarding what limitations are imposed by Plaintiff's foot condition, and (2) further consider Plaintiff's maximum RFC during the entire period at issue and provide rationale with specific references to evidence in the record supporting the assessed limitations, as well as "request the nontreating source provide additional evidence and/or further clarification of the opinion and medical source statements about what the clamant can still do despite the impairment."  AR at 1531.  The Appeals Council also directed the case be assigned to another ALJ.  *Id*.

In accordance with the Appeals Council's Order, on April 8, 2021, a third administrative hearing was held via telephone conference before ALJ Bryce Baird ("ALJ Baird" or "the ALJ")) ("third hearing").  AR at 1437-78.  Appearing and testifying at the third hearing were Plaintiff, represented by Zachary Zabawa, Esq., VE Steven Sachs ("the VE"), and board certified and licensed psychologist Richard M. Anderson, Ph.D. ("Dr. Anderson") who appeared as an impartial medical expert.  AR at 2246-48.  On June 29, 2021, ALJ Baird issued a decision denying Plaintiff's claim ("third ALJ decision" or "the ALJ's decision"), AR at 1407-36.  On September 21, 2021, Plaintiff commenced the instant action challenging the ALJ's decision as unsupported by substantial evidence in the record.

On August 17, 2022, Plaintiff filed a motion for judgment on the pleadings (Dkt. 13) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum").  On January 17, 2023, Defendant filed a motion for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to [Plaintiff's][4] Brief Pursuant to the Local Rule 5.5 (Dkt. 16-1) ("Defendant's Memorandum").  On February 28, 2023, Plaintiff filed Plaintiff's Reply Brief to Defendant's Motion for Judgment on the Pleadings (Dkt. 17) ("Plaintiff's Reply"), in which Plaintiff "deems no reply necessary because any reply would simply duplicate arguments made in the original brief, and accordingly relies on the original arguments and authority contained in the primary brief."  Plaintiff's Reply at 1.  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED and the Clerk of the Court is DIRECTED to CLOSE the file.


**FACTS**[5]

Plaintiff Farzana M. ("Plaintiff"), born on September 17, 1970, was 41 years old as of her alleged DOD of February 3, 2012, the date of her disability benefits application,[6] and 50 years old as of June 29, 2021, the date of the third ALJ decision.

---

[4] Unless otherwise indicated, all bracketed material has been added.
[5] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.
[6] Because Plaintiff is eligible for SSI benefits only from the date of her application, on April 6, 2021, Plaintiff amended her DOD from January 1, 1996 to the date of her disability benefits application, *i.e.*, Feb. 3, 2012.  AR at 1680.  *See* 20 C.F.R. § 416.330(b) ("If you meet all the requirements for eligibility while your application is in effect, the earliest month for which we can pay you benefits is the month following the month that you first meet all the requirements.").

AR at 124, 1411, 1428, 1458.  Plaintiff moved to the United States from Iran after

graduating high school in Iran, and in 2004 attended one year of college in the United

States.[7]  AR at 146, 591, 1206, 1214, 1459.  As of the third hearing, Plaintiff was living

with her two adult daughters in an apartment, and was divorced from her abusive

husband.  AR at 1209, 1214, 1458-59.

Plaintiff has a driver's license but rarely drives because of anxiety.  AR at 1459,

1461.  Plaintiff testified at the third hearing that she used to be able to go out by herself,

but has not done so in two years and now only goes out if accompanied by her

daughters.  AR at 1468-69.  According to Plaintiff, she attends mosque daily.  AR at

557.   Since filing her application for disability benefits, Plaintiff has traveled several

times including to Iran in 2012 and 2017, AR at 496, 1206, 1209, 1221-27, and Europe

for several months in 2018 where she was mostly in Denmark visiting relatives.  AR at

867, 1461-62.  Plaintiff last worked in 2010 providing child care for a friend, and in retail

in 2008, but has no past relevant work ("PRW") within the past 15 years.  AR at 152.

It is undisputed that Plaintiff has suffered from mental health maladies for many

years, as well as some physical ailments including a foot impairment and arthritis.  As

relevant to this action, when Plaintiff's application was filed on February 3, 2012, she

received primary care from Lifetime Health Medical Group, AR at 231-75, 327-430, 512-

20, and later Plaintiff's primary care physician was Esfandiar Mafi, M.D. ("Dr. Mafi"), AR

at 815-20, 838-89, 2275-81.  Plaintiff treated with Jennifer Teeter, D.O. ("Dr. Teeter") at

Buffalo Orthopedic Group, LLC for left foot pain, AR at 440-54, and Plaintiff received

treatment for her mental health at Horizon Health Services ("Horizon Health") where she

---

[7] Precisely when Plaintiff moved to the United States is not clear from the record, but may have been in 1998, *see* AR at 2282, and presumably it was before she attended her year of college.

treated with psychiatrist Richard Wolin, M.D. ("Dr. Wolin"), psychiatric nurse practitioners Isabel Molina, N.P. ("NP Molina"), and Katie Millard, N.P. ("NP Millard"), and senior mental health counselor Patricia Jankowski ("MHC Jankowski").  AR at 276-84, 321-26, 481-503, 544-47, 550-60, 899-1046.

On January 18, 2013, X-rays of Plaintiff's left foot showed some lateral soft tissue edema compatible with ankle sprain but no fractures and Plaintiff was diagnosed with Achilles tendinitis.  AR at 443.  On January 31, 2013, an MRI of Plaintiff's left ankle showed Achilles tendinosis, plantar fasciitis with posterior tibial tendonitis, peroneal tendinitis, and joint synovitis.  AR at 453-54.  On March 25, 2013, Plaintiff underwent an electromyography ("EMG") study of her left lower extremity at Dent Neurologic Institute, the results of which were normal, showing no evidence of electrophysiologic of a left lumbosacral radiculopathy, a large fiber polyneuropathy, or a left lower extremity mononeuropathy.  AR at 456-57, 505-06.

In connection with Plaintiff's disability benefits application, Plaintiff underwent several physical and mental health evaluations by her treatment providers and by consultative examiners.  In particular, on April 30, 2012, Plaintiff underwent on a consultative basis a psychiatric evaluation by psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia"), AR at 285-88, and an internal medicine examination by Samuel Balderman, M.D. ("Dr. Balderman").  *Id*. at 289-92.  On Jule 6, 2012, non-examining State agency review psychiatrist J. Echevarria, M.D. ("Dr. Echevarria") completed a Mental Residual Functional Capacity Assessment.  AR at 293-309.  On July 8, 2013, MHC Jankowski completed a Mental Residual Functional Capacity Questionnaire.  AR at 476-80.  On June 18, 2018, Plaintiff's treating physician, Dr. Mafi, completed another Mental

Residual Functional Capacity Questionnaire.  AR at 815-20.  Upon the request of Erie County Department of Social Services ("DSS") for employability assessment, several assessments of Plaintiff's mental and physical impairments were completed by Plaintiff's mental health treatment providers at Horizon Health, including by NP Molina on January 31, 2013, AR at 2250-51 ("NP Molina's assessment"), by Dr. Wolin on November 19, 2013, *id*. at 2252-54  ("Dr. Wolin's assessment"), and by NP Millard on November 16, 2016 ("NP Millard's assessment").  *Id*. at 2258-59.  On August 22, 2019, Dr. Mafi assessed Plaintiff with depression and back pain, as well as with regard to Plaintiff's mental functioning.  *Id*. at 2273-74.  On April 13, 2020, Dr. Mafi prepared a physical treating medical source statement.  *Id*.  at 2107-2111.  On April 17, 2021, Plaintiff underwent a consultative orthopedic examination by Hongbiao Liu, M.D. ("Dr. Liu"), *id*. at 2282-85, who also completed a medical source statement of ability to do physical work-related activities.  *Id*. at 2286-91.  At the third hearing, Dr. Anderson testified as to the impact of Plaintiff's mental impairments on her ability to perform work-related activities.  *Id*. at 1442-49.


## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[8] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if

---

[8] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.     Disability Determination

Although Plaintiff seeks only SSI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by

the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and

416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§

404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW,

disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW

relevant work, the Commissioner, at the fifth step, must consider whether, given the

applicant's age, education, and past work experience, the applicant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the

national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks

and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is

on the applicant for the first four steps, with the Commissioner bearing the burden of

proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v.*

*Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because

if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases

and the claimant is not eligible for disability benefits, but if the claimant meets the

criteria for the third or fourth step, the inquiry ceases with the claimant eligible for

disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3.    Analysis of Plaintiff's Arguments

In the instant case, ALJ Baird found Plaintiff has not engaged in substantial

gainful employment ("SGA"), since February 3, 2012, the application date.  AR at 1413.

The ALJ found Plaintiff has the severe impairments of bipolar disorder, depressive

disorder, anxiety disorder, and arthritis of the lumbar spine, AR at 1413, and non-severe

impairments of left foot and ankle pain, plantar fasciitis and fibromatosis,

hypothyroidism, gastritis, migraine headaches, obesity, and history of small ovarian

cyst, AR at 1413-15, but that Plaintiff's allegations of seizures and a kidney anomaly are not corroborated by any evidence, *id*. at 115, and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1. *Id*. at 1415-17. ALJ Baird further determined Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.1967(b), with limitations including that she can occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, and crouch, never crawl, can never be exposed to excessive vibration or exposed to hazards such as unprotected heights and moving machinery, and is further limited to simple, routine tasks that can be learned after a short demonstration or within 30 days, no production rate or pace work, no work requiring more than simple work related decisions, driving a vehicle, travel to unfamiliar places, independently developing work strategies or identifying workplace needs, teamwork such as on a production line, but rather work allowing for variations in productivity, and requiring performing the same tasks every day with little variation in location, hours, or tasks. *Id*. at 1417-27. Plaintiff has no PRW, but given her age,[9] high school education, and RFC, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a hand packer, production worker, and production inspector. *Id*. at 1427-28. Accordingly, the ALJ found Plaintiff not

---

[9] As ALJ Baird observed, AR at 1427, when the application was filed on February 3, 2012, Plaintiff was 41 years old which is defined as a younger individual ages 18-49, but upon attaining age 50 on September 17, 2020, changed age category to closely approaching advanced age. 20 C.F.R. § 416.963.

disabled as defined in the Act since February 3, 2012, the date the application was filed. *Id*. at 1428.

In support of her motion, Plaintiff argues that remand is warranted because in finding Plaintiff not disabled, the ALJ improperly relied on the non-treating and non-examining opinion expressed by Dr. Anderson at the third hearing, Plaintiff's Memorandum at 27-34, failed to give valid reasons for rejecting opinions from Plaintiff's mental health treatment team, *id*. at 34-37, and posed an impermissibly vague hypothetical to the VE. *Id*. at 37-38.[10] Defendant argues ALJ Baird properly weighed the opinion evidence in the administrative record and arrived at an RFC determination that is supported by substantial evidence, Defendant's Memorandum at 5-14, and the hypothetical posed to the VE was not vague. *Id*. at 15. There is no merit to Plaintiff's arguments.

Preliminarily, the court addresses the Appeals Counsel's direction that the ALJ develop evidence regarding Plaintiff's heel impairment including obtaining an opinion from a consultative examiner regarding the limitations posed by such impairment. AR at 1410.[11] Toward this end, ALJ Baird obtained the physical treating medical source statement completed on April 13, 2020, in which Dr. Mafi reported Plaintiff's diagnoses included as chronic lower back pain, described as mild to moderate, intermittent, and radiating to her legs, and depression/anxiety described as depressed mood and fatigue. *Id*. at 2107. Dr. Mafi opined Plaintiff is not a malingerer. *Id*. at 2108. Plaintiff's lower

---

[10] Because the undersigned is not remanding the matter, Plaintiff's further argument that the proper remedy is remand for calculation of benefits given the time that has elapsed since Plaintiff filed her benefits application, Plaintiff's Memorandum at 38-40, is not reached.

[11] The court notes Plaintiff does not specifically challenge the ALJ's Decision on this point, but the court addresses it in light of the Appeals Council's direction upon remand that the ALJ consider it.

back pain, which she frequently experienced, would cause difficulty with pulling and

pushing heavy objects, prevented Plaintiff from walking more than one block, sitting

more than one hour before needing to change position, she could stand for 15 minutes

at a time, and in total, Plaintiff could stand or walk for less than two hours and sit about

four hours in an eight-hour workday. *Id*. at 2107-09. An eight-hour workday would have

to include breaks every 60 minutes or as needed to permit Plaintiff to walk around for

five to ten minutes, and Plaintiff needed to be able to shift positions at will from sitting,

standing, or walking, but Plaintiff used no assistive device to walk. *Id*. at 2109.

According to Dr. Mafi, Plaintiff could lift and carry frequently less than 10 lbs.,

occasionally 10 lbs., rarely 20 lbs., and never 50 lbs. *Id*. at 2109. Dr. Mafi rated Plaintiff

as being able to frequently look down, turn her head left or right, and look up,

occasionally hold her head in a static position, twist, stoop (bend), crouch/squat, and

climb stairs, but never climb ladders, and Plaintiff had no significant limitations to

fingering. *Id*. at 2110. Dr. Mafi opined that Plaintiff's inability to tolerate stress rendered

her incapable of performing even low stress jobs. *Id*. at 2108. Plaintiff was estimated to

miss four days of work per month, her symptoms produced "good" and "bad" days, and

she had displayed her symptoms for five years. *Id*.

With regard to the April 17, 2021 consultative orthopedic examination, Dr. Liu

reported Plaintiff appeared in no acute distress, had a left-side limp, could not walk on

heels and toes, and squat was 10% of full because of back and foot pain, but station

was normal, plaintiff used no assistive devices, needed no help changing for

examination or getting on and off the exam table, and rose from her chair without

difficulty. AR at 2282-83. Physical examination findings were remarkable only for

Plaintiff's thoracic and lumbar spine which showed restricted range of motion ("ROM"), straight leg raising ("SLR") was positive bilaterally in the low back and below the knee area, confirmed in both the supine and sitting positions, and Plaintiff's left whole leg sensation to touch was decreased on the right side, with decreased left ankle ROM.  *Id*. at 2284.  Dr. Liu diagnosed Plaintiff with history of fall injury, injuring the left shoulder, low back, and left foot, history of anxiety and depression, history of hypothyroidism, and history of GERD, and Plaintiff's prognosis was stable.  *Id*.  According to Dr. Liu, Plaintiff had a moderate limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weight, prolonged sitting, and standing.  *Id*. at 2285.

Also on April 17, 2021, Dr. Liu completed a medical source statement of ability to do physical work-related activities for an eight-hour day, five days a week.  *Id*. at 2286-91.  Dr. Liu assessed Plaintiff could lift and carry up to 10 lbs. continuously, 11 to 20 lbs. frequently, 21 to 50 lbs. occasionally, but never more than 50 lbs.  *Id*. at 2286.  The limitations to lifting and carrying were attributed to Plaintiff's limited ROM in her back and her limp.  *Id*.  At one time and without interruption, Plaintiff could sit for one hour, stand for one hour, and walk for two hours, and in total for an eight-hour workday, Plaintiff could sit for two hours, stand for two hours, and walk for four hours.  *Id*. at 2287.  Plaintiff's use of her hands was limited only with regard to pushing and pulling which she could do frequently, and Plaintiff could operate foot controls continuously with her right foot, but only occasionally with her left foot because of a limited ROM of her left ankle.  *Id*. at 2288.  Plaintiff could frequently climb ramps and stairs, occasionally kneel, crouch, and crawl, but never climb ladders or scaffolds, balance, or stoop.  *Id*. at 2289. With regard to environmental limitations, Plaintiff could frequently work at unprotected

heights, around moving mechanical parts, and operate a moving vehicle, could continuously work in conditions of humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat, and vibrations, and occasionally in extreme cold, and could tolerate very loud noises.  *Id*. at 2290.  Plaintiff could perform all activities listed on the form including shopping, travel without a companion for assistance, ambulate without assistive device, walk one block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps with use of a handrail, prepare a simple meal and feed herself, care for personal hygiene, and sort, handle, or use papers and files.  *Id*. at 2291.

This recent evidence is largely consistent with the earlier evidence in the record regarding Plaintiff's ability to perform physical work-related activities.  Specifically, in his consultative April 30, 2012 internal medicine examination report, Dr. Balderman noted Plaintiff's chief complaints included thyroid disease, kidney disease, and lumbar spine pain described as intermittent, moderate, sharp and present for one year.  AR at 289.  Plaintiff stated "she may have daily seizures, which are due to panic attacks."  *Id*.  Plaintiff's activities of daily living ("ADLs") were reported as "typical" with Plaintiff able to cook and clean.  *Id*. at 290.  Physical examination was largely normal with Dr. Balderman diagnosing Plaintiff with hypothyroidism and "doubtful history of seizure," and providing a medical source statement that Plaintiff "has minimal physical limitations."  *Id*. at 291.  Further, such findings are consistent with Dr. Mafi's assessment on August 22, 2019 that Plaintiff had moderate limitations to walking, standing, sitting, lifting/carrying, pushing, pulling and bending, and climbing stairs or other climbing, but no limitations to seeing, hearing, speaking, or using her hands.  AR at 2273-74.

Although Dr. Mafi further opined Plaintiff's physical and mental health limitations preclude her from competitive employment, her restrictions were expected to last more than 12 months, and referral to rehabilitation was not recommended, *id*. at 2274, the ALJ discounted this finding as unsupported by any evidence of clinical abnormalities in the record.  AR at 1420.   Accordingly, with regard to Plaintiff's physical impairments and RFC, ALJ Baird's decision is supported by substantial evidence in the record.

The ALJ's determination pertaining to the impact of Plaintiff's mental health impairments is also supported by substantial evidence in the record contrary to Plaintiff's arguments that the ALJ improperly relied on the non-treating and non-examining opinion expressed by Dr. Anderson at the third hearing, Plaintiff's Memorandum at 27-34, and failed to give valid reasons for rejecting opinions from Plaintiff's mental health treatment team, *id*. at 34-37.  It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  Further, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013).  Rather, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'"  *Id*. (quoting *Matta*, 508 Fed.Appx. at 56 (brackets in *Schillo*).  The ALJ is permitted to formulate the RFC without regard to any particular medical opinion provided the record as a whole contains sufficient evidence from which the claimant's RFC can be determined.  *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-

10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).  As such, so long as the evidence in the administrative record, including diagnostic evidence, MRI results, X-ray results, and treatment notes support the ALJ's RFC determination, it cannot be said that "no reasonable factfinder could have reached the same conclusion," so as to uphold an RFC assessment upon judicial review.  *Schillo*, 31 F.4th at 78 (citing *Brault*, 683 F.3d at 448).  Here, the requisite deferential review of the ALJ's decision establishes that it is supported by substantial evidence in the record with regard to Plaintiff's mental impairments.

First, there is no merit to Plaintiff's challenge to Dr. Anderson's testimony at the third hearing as a medical expert and to which the ALJ gave "great" weight, AR at 1426, despite Dr. Anderson never examining Plaintiff but only reviewing Plaintiff's medical record which did not contain Exhibit 39F.[12]  Plaintiff's Memorandum at 29-31.  Dr. Anderson testified that his review of Plaintiff's medical records indicated Plaintiff was moderately limited in understanding, remembering, and applying information, and that although there was no information for him to rate Plaintiff in the area of interacting with others, upon inspecting his notes, he did not see any evidence in Plaintiff interacting with others that applied in the context of a work situation.  AR at 1445.  Dr. Anderson also assessed Plaintiff with mild to moderate limitations in maintaining concentration,

---

[12] Exhibit 39F is a compilation of the various mental health assessments prepared by Plaintiff's treatment providers at Horizon Health for Erie County DSS to use in connection with assessing Plaintiff's eligibility for benefits.

persistent, and pace, and moderate limitations in adapting and managing herself.  *Id*. at

1445.  Despite initially testifying Plaintiff would have difficulty dealing with complex tasks

and changes, he was unsure of what impact Plaintiff's depression and anxiety posed to

Plaintiff interacting with others, and that Plaintiff had a reduced ability to concentrate on

a sustained basis, AR at 1446, but later specified Plaintiff's functional limitations

included no work involving complex tasks, limited ability to adapt to changes in work

environment, and limited ability dealing with other forms of work stress including sudden

work changes and no productivity standards based on time.  *Id*. at 1446-47.  The latter,

more restrictive findings were accounted for in ALJ Baird's RFC determination.  AR at

1417.

Further, as Defendant argues, Defendant's Memorandum at 8, Dr. Anderson

testified that he did review Exhibit 39F, but did not save a copy, and also discussed

some of the limitations contained in Exhibit 39F, and testified regarding why such

limitations are not supported by the record.  AR at 1449-51.  For example, Plaintiff's

attorney questioned Dr. Anderson about NP Molino's January 31, 2013 assessment that

Plaintiff was moderately or very limited with regard to eight separate mental functioning

categories.  AR at 1449-1451.  Dr. Anderson responded that such findings were

contradicted by the progress notes from Horizon Health Services for the period August

8, 2013 to December 2, 2017, which show Plaintiff functioning without such limitations.

AR at 1451 (citing AR at 899-1406).  The court's perusal of Plaintiff's progress notes

from Horizon Health are consistent with Dr. Anderson's interpretation.  For example, on

August 28, 2014, Plaintiff was reported as "doing better overall.  Mood improved.

Reports mood has been stable.  Denies any episodes of depression or mania though

sometimes feels sad and lonely at night. . . .  Report further indicates client's mood was improved and affect brighter, was smiling more, stated she is getting out more."  AR at 1081.  On October 14, 2015, Plaintiff's psychiatric medical exam was essentially unremarkable except that Plaintiff was depressed with a blunted affect.  AR at 1131-32. Further, despite the fact that Dr. Anderson did not personally examine Plaintiff, "[i]t is well-established that '[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may ... provide substantial evidence supporting an ALJ's decision.'"  *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) (quoting *Cassandra K. v. Comm'r of Soc. Sec.*, 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021).

In support of her argument, Plaintiff relies on the opinions of Plaintiff's mental health care providers, including MHC Jankowski, MP Molina, and Dr. Wolin.  Plaintiff's Memorandum at 34-37.  Specifically, on the Mental Residual Functional Capacity Questionnaire completed on July 8, 2013, MHC Jankowski reported treating Plaintiff since 2010 for bipolar II disorder, noting Plaintiff had made minimal progress because of her ongoing symptoms of depression and anxiety.  AR at 476-80.  Plaintiff's symptoms included anhedonia, appetite disturbance with weight change, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, somatization (recurrent and multiple medical symptoms with no discernible organic cause) unexplained by organic disturbance, mood disturbance, difficulty thinking or concentrating, psychomotor agitation or retardation, paranoid thinking or inappropriate suspiciousness, recurrent obsessions or compulsions which are a source of marked

distress, emotional withdrawal or isolation, bipolar syndrome with history of episodic periods, intense and unstable interpersonal relationships and impulsive and damaging behavior, perceptual or thinking disturbances, hallucinations or delusions, hyperactivity, easy distractibility, sleep disturbance, and recurrent severe panic attacks.  AR at 477. Based on Plaintiff's symptoms, MHC Jankowski checked boxes indicating mental abilities and aptitudes needed were "limited but satisfactory" pertaining to six separate categories for unskilled work, *id*. at 478-49, "seriously limited" as to six separate categories for unskilled work, three for semiskilled and skilled work, and one for particular types of jobs, *id*., "unable to meet competitive standards" as to three separate categories for unskilled work, one for semi-skilled and skilled work, and two for particular types of jobs, and "no useful ability to function" as to one separate category for unskilled work, and two for particular types of jobs.  *Id*.  In NP Molina's assessment completed on January 31, 2013, Plaintiff was diagnosed with mental health impairments of bipolar II disorder and depressive disorder NOS.  AR at 2250-51.  According to NP Molina, Plaintiff's mental health impairments resulted in limitations to mental functioning including being moderately limited in the categories of interacting with others, maintaining socially appropriate behavior without exhibiting personal extremes, and maintaining basic standards of personal hygiene and grooming, and very limited in the categories of understanding and remembering instructions, carrying out instructions, maintaining attention/concentration, making simple decisions, and appearing able to function in a work setting at a consistent pace.  *Id*. at 2251.  NP Molina described Plaintiff's limitations on work activities as being unable to concentrate and focus in social settings, Plaintiff's limitations were expected to be permanent, and referral to

rehabilitation was not recommended.  *Id*.  Instead, NP Molina recommended Plaintiff be

screened for SSI based on her bipolar diagnosis and need for ongoing treatment.  *Id*.

Dr. Wolin's assessment dated November 19, 2013, provides an evaluation and opinion

essentially similar to NP Molina's assessment.  AR at 2252-54.  Similar findings are

included in NP Millard's assessment of November 16, 2016, with the exception of

diagnosing Plaintiff with bipolar II disorder, but not depressive disorder.  AR at 2258-59.

Nevertheless, where, as here, the ALJ relies on other opinions contradicting

those on which the claimant relies, *i.e.*, Drs. Santarpia, Anderson, and Mafi, the Second

Circuit will "defer to the Commissioner's resolution of conflicting evidence."  *Cage v.

Commissioner of Social Security*, 692 F.3d 118, 122 (2d Cir. 2012).  In particular, Dr.

Santarpia's April 30, 2012 psychiatric report included that Plaintiff was then 42 years

old, married for 21 years, lived with her husband and two daughters ages 19 and 13,

graduated high school where she was in regular classes, not then employed and had no

work history.  AR at 285.  Upon mental status examination, Plaintiff's demeanor and

responsiveness to questions was cooperative and her manner of relating, social skills,

and overall presentation was adequate.  *Id*. at 286.  Dr. Santarpia diagnosed Plaintiff

with depressive disorder not otherwise specified ("NOS"), anxiety disorder NOS, history

of seizures and thyroid dysregulation.  *Id*. at 287-88.  In her medical source statement,

Dr. Santarpia opined that Plaintiff presents as able to follow and understand simple

directions and instructions, perform simple tasks independently, maintain attention and

concentration, maintain a regular schedule, learn new tasks, and appropriately deal with

stress within normal limits.  *Id*. at 287.  According to Dr. Santarpia, Plaintiff had a mild

impairment in independently performing complex tasks, making appropriate decisions,

and adequately relating with others, and Dr. Santarpia attributed such difficulties to Plaintiff's distractibility.  *Id*.  Dr. Santarpia recommended Plaintiff continue with her current psychological and psychiatric treatment and consider vocational training and rehabilitation.

On a Mental Residual Functional Capacity Assessment completed on June 6, 2012, Dr. Echevarria assessed Plaintiff as "moderately limited" with regard to her abilities to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others, AR at 293-94, and referred the reader to an accompanying Psychiatric Review Technique ("PRT") form for further elaborations of his assessments.  *Id*. at 295.  In the PRT, completed on June 7, 2012, by Dr. Echevarria assessed Plaintiff with affective disorders and anxiety-related disorders, indicated a physical RFC assessment was necessary, AR at 297-306, checked boxes showing Plaintiff with a mild limitation to maintaining social functioning and maintaining concentration, persistence or pace, but no limitations with ADLs and no repeated episodes of deterioration, each of an extended duration, *id*. at 307, and concluded Plaintiff "retains the capacity to perform simple, low contact tasks."  *Id*. at 309.

On a Mental Residual Functional Capacity Questionnaire completed on June 18, 2018, AR at 815-20, Dr. Mafi, Plaintiff's treating physician, reported treating Plaintiff every three to six months, her diagnosis was dysthymic disorder, hypothyroidism, and victim of spousal abuse.  AR at 816.  Plaintiff's prognosis was "good," and her medications included Buspar (anti-anxiety), Fluoxetine (anti-depressant), Levothyroxine (hypothyroidism), and Pantoprazole (gastroesophageal reflux disease ("GERD")), with drowsiness reported as a side effect of such medications.  *Id.*   Plaintiff's clinical findings upon mental status examination included depressed mood and dependent personality with "fair" prognosis.  *Id.*   Dr. Mafi checked boxes indicating Plaintiff's symptoms included appetite disturbance with weight change, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress, paranoid thinking or inappropriate suspiciousness, emotional lability, and sleep disturbance.  *Id.* at 817.  Based on Plaintiff's symptoms, Dr. Mafi checked boxes indicating mental abilities and aptitudes needed were either "unlimited or very good," or "limited but satisfactory" pertaining to 16 separate categories for unskilled work, five separate categories for semiskilled and skilled work, and four categories for particular types of jobs.  *Id.* at 818-19.  For none of the 25 total categories of mental abilities and aptitudes did Dr. Mafi check any of the other three boxes indicating Plaintiff was "seriously limited," "unable to meet competitive standards," or "no useful ability to function."  *Id.*   Plaintiff was reported as not having a low IQ or reduced intellectual functioning, and her psychiatric symptoms do not exacerbate her physical symptoms.  *Id.* at 819.  According to Dr. Mafi, Plaintiff's impairments or treatment would cause Plaintiff to be absent from work "about one day

per month," Plaintiff's impairments were expected to last at least 12 months, but she was not a malingerer, and her impairments were "reasonably consistent with the symptoms and functional limitations" described in the report, and were not attributed to any substance abuse. *Id*. at 820.  Dr. Mafi concluded that Plaintiff cannot engage in full-time competitive employment on a sustained basis, but could manage benefits in her best interest. *Id*.  On August 22, 2019, Dr. Mafi found no limitations with regard to Plaintiff's mental functioning.  AR at 2273-74.

Nor did ALJ Baird's reliance on the consultative opinions violate the so-called "treating physician's rule."  Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) ("'[T]he opinion of a treating physician is not binding if it is contradicted by substantial evidence, and the report of a consultative physician may constitute such evidence.'" (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983))).  The report of a consultative psychologist also may constitute substantial evidence.  *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011).  Accordingly, the ALJ's reliance on opinions of Drs. Santarpia, Anderson, Echevarria, and Mafi, as well as on the Plaintiff's treatment progress notes from Horizon Health, establishes the ALJ did not err in failing to give

controlling weight to the opinions of MHC Jakowski, NP Molino, NP Millard, and Dr. Wolin.

Further, there is no merit to Plaintiff's argument, Plaintiff's Memorandum at 37-38, that ALJ Baird posed an impermissibly vague hypothetical to the VE.  Plaintiff particularly challenges the ALJ's inclusion in the hypothetical of work allowing for "variations in productivity" without explaining such term or what evidence supported it. *Id*.  As Defendant argues in opposition, Defendant's Memorandum at 15, the VE, by responding to the hypothetical without requesting clarification, establishes the VE did not consider the term to be vague.  *See Stackhouse v. Berryhill*, 2018 WL 4292155, at *5 (W.D.N.Y. Sept. 10, 2018) ("A VE's ability to answer a hypothetical without additional clarification is evidence that the hypothetical was not inappropriately vague." (citing *Slattery v. Colvin*, 111 F.Supp.3d 360, 376 (W.D.N.Y. 2015) (finding that by responding to the hypothetical posed by the ALJ without requesting clarification, the VE affirmed he understood the hypothetical, and citing *Thompson v. Astrue*, 2013 WL 265239, at * 5 (W.D.N.Y. Jan. 23, 2013) (rejecting the plaintiff's claim the RFC formulation was unsupported by substantial evidence because of a vague hypothetical posed to the VE))).  There thus is no merit to this argument.

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's decision that Plaintiff is not disabled under the Act.  *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 ("Under this 'very deferential standard of review [applicable to

actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault*, 683 F.3d at 448 (italics in original).  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___; 139 S.Ct. 1148,  1154 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, see Discussion, *supra*, at 9, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).

Accordingly, the ALJ's decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 13) is DENIED; Defendant's Motion (Dkt. 16) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 5, 2024
            Buffalo, New York

27